**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                    Case No.  3:07-cr-296-J-33JRK

WILLIAM JOE HORNE
_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Defendant William Joe Horne's Amended Motion

to Dismiss Indictment with Prejudice for Failure to Bring the Defendant to Trial Within 70

Days as Required by 18 USC [§] 3161(c)(1) (Doc. 329; Motion) filed February 6, 2008. The

Motion is opposed.  See United States' Response in Opposition to Defendant's Amended

Motion to Dismiss (Doc. 337; Opposition).  Following an initial motion hearing conducted on

February 7, 2008, the Court determined that an evidentiary hearing was appropriate, which

was conducted on February 12, 2008.  At the evidentiary hearing, Defendant orally moved

to supplement the Motion and was granted leave to file a supplemental memorandum in

support thereof.  See Transcript II (Doc. 361; hereinafter "Tr. II") at 3-4.  Defendant later

requested, and was granted, an extension of time in which to file his supplemental

memorandum.  See Order of Feb. 27, 2008 (Doc. 363).  However, Defendant subsequently

declined to submit a supplemental memorandum, requesting that the Motion be considered

on the existing record. See Defendant's Corrected Response to Doc. No. 273 (Doc. 374),

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local
Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document.
Failure to file timely objections shall bar the party from a de novo determination by a district judge and from
attacking factual allegations on appeal.

filed March 18, 2008.  The Government did not respond.  The motion is now fully briefed and ripe for the Court's consideration.

## I.    Background

On November 7, 2007, an indictment was returned against Defendant William Joe Horne[2] and 16 co-defendants, alleging conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  See Indictment (Doc. 1), at 1-2.  A warrant was issued for Defendant's arrest on November 8, 2007.  See Doc. 37.  In the early morning hours of November 15, 2007, Defendant was apprehended in St. Johns County, Florida by a group of law enforcement officers, including representatives from the U.S. Marshals Service, the Drug Enforcement Administration ("DEA"),  and the St. Johns County Sheriff's Office.  Immediately following his arrest, Defendant was transported to the St. Johns County Detention Center for booking.  For reasons discussed below, detention facility officers booked the Defendant on an unrelated outstanding warrant for theft from Clay County, Florida.  The Defendant remained in state custody until December 27, 2007, following the resolution of his Clay County charge.  On December 27, Defendant was taken into federal custody and brought before a federal magistrate judge for his initial appearance on the federal charge.  Following a detention hearing conducted on January 3, 2008, the Defendant was ordered detained.

On January 25, 2008, Defendant filed a motion seeking various forms of miscellaneous relief (Doc. 316), primarily requesting a determination of when he was

---

[2] The case involves two co-defendants with the same surname, William Joe Horne and Daniel Jay Horne.  All references to Defendant hereinafter will refer to Defendant William Joe Horne, unless otherwise noted.

arrested for purposes of his federal charge, when his rights attached under the Speedy Trial Act, 18 U.S.C. § 3161, and also moving to suppress any evidence seized prior to his initial appearance in federal court.  Following the filing of a response by the Government (Doc. 318), Defendant filed his first Motion to Dismiss with Prejudice (Doc. 322) on February 1, 2008, for failure to bring Defendant to trial within 70 days under the Speedy Trial Act.  This was soon followed by Defendant's amended Motion on February 6, 2008.[3]

## II.     Evidence and Testimony

At the evidentiary hearing, the following three witnesses testified for the Government: Deputy U.S. Marshal Joel McAllister,[4] Special Agent Stephen Johns,[5] and Sergeant Jason Caban.[6]  See Transcript I (Doc. 357; hereinafter "Tr. I") at 19, 70, 105.  Defendant did not call any witnesses.  See Tr. II at 3.

The evidence at the hearing established that on the evening of November 14, 2007, DEA Special Agent Stephen Johns, the case agent for the 17-defendant conspiracy case, met with a group of law enforcement officers from DEA and the U.S. Marshals Service to request their assistance in apprehending Defendant.  See Tr. I at 20, 71, 73.  Agent Johns believed that Defendant would be at a particular location in St. Augustine, Florida (located

---

[3] The motion for miscellaneous relief (Doc. 316) was withdrawn in part and denied in part by the Court's Order of February 8, 2008 (Doc. 335), with the understanding that that part of the motion addressing issues relating to Rule 5 of the Federal Rules of Criminal Procedure was subsumed by Defendant's amended Motion to Dismiss.

[4] Deputy Marshal McAllister has been employed by the U.S. Marshals Service for five years.  Tr. I at 19.

[5] Special Agent Johns has served as a DEA agent since 1996.  Tr. I at 70.

[6] Sergeant Caban is a Corrections Sergeant with the St. Johns County Sheriff's Office and has been employed by the Sheriff's Office for ten years.  Tr. I at 105.

in St. Johns County) later that night.  See id.  Agent Johns himself was unable to go to St. Johns County for the arrest and therefore needed assistance.  See id. at 73.  At approximately 1:30 A.M. on November 15, 2008, a collection of law enforcement officers, including other DEA agents, Deputy U.S. Marshals, and officers of the St. Johns County Sheriff's Office, saw Defendant's vehicle pass by the location they were surveilling and moved in to conduct a traffic stop.  See id. at 20-21.  Defendant was driving the vehicle, and co-defendant Michelle Westbrook was a passenger in the vehicle.  Id. at 21-22.  The Defendant was ordered out of the vehicle, handcuffed, and was informed by DEA Special Agent Dave Carpenter that he was being taken into custody on a federal arrest warrant for conspiracy.  Id. at 22, 46.  Other agents handcuffed and took custody of co-defendant Westbrook.  Id. at 22, 46-47.  The Defendant's vehicle was searched, but nothing of evidentiary value was found.  Id. at 23.

Defendant was placed into a U.S. Marshals Service vehicle and was transported to the St. Johns County Detention Center by Deputy U.S. Marshals Joel McAllister and Eric Marcotte.  Id. at 24.  The St. Johns County Detention Center was chosen because it was the closest facility to the scene of the arrest.  Id. at 25.  The Defendant was not interrogated at the time of arrest or during the ride to the detention center and did not make any statement.  Id. at 25.  Deputy Marshals McAllister and Marcotte did not have a copy of Defendant's arrest warrant with them.  Id. at 26.  According to the Deputy Marshals, this was not unusual because Defendant's case was a DEA case, and the Marshals were there merely to assist with the arrest.  Id. at 53.

During the drive to the detention center, Deputy Marshal Marcotte called Agent Johns on his cell phone to see if he had a copy of the arrest warrant. Id. at 75.   Agent Johns confirmed he did have a copy, but said he would not be arriving at the detention center until after he had finished conducting a consent search of a location identified by Westbrook. Id. at 75, 77-78.  Agent Johns and Deputy Marshal Marcotte discussed the possibility of booking Defendant into the facility using his outstanding Clay County charge for petit theft, in the event that they had any difficulty booking Defendant in on the federal charge without the arrest warrant. Id. at 26-27, 76.  Agent Johns indicated he would be bringing a copy of the federal warrant with him when he arrived at the detention center later with Westbrook. Id. at 77.

Upon arrival at the St. Johns County Detention Center, Deputy Marshals McAllister and Marcotte informed the deputy who met them at the intake entrance that Defendant had been arrested on a federal warrant, but that they did not have a copy of the warrant. Id. at 28.  The officer conducted a computer check for Defendant's federal warrant through the National Crime Information Center (NCIC) system, but the federal warrant did not appear in the system. Id. at 29.  Sergeant Jason Caban, a corrections sergeant at the detention center, advised the Marshals he would be unable to accept Defendant without an arrest warrant. Id. at 108.

The Deputy Marshals then informed the corrections officers of Defendant's outstanding warrant from Clay County. Id. at 29.  A teletype message was sent to Clay County to confirm the validity of the warrant, which was returned in the affirmative. Id. at 109; Gov't Exh. 5.  Defendant was booked into the facility on the Clay County warrant shortly

after 3:00 A.M. on November 15, 2008.  Tr. I at 113-14.  Another teletype was sent to Clay County confirming that Defendant was in custody at the St. Johns County facility.  Id. at 116-17; Gov't Exh. 6.

During the booking process, the intake deputy advised the Marshals to write a statement to be used as an informal hold to the effect that Defendant had a federal warrant and that DEA agents were coming to the detention center later that morning with a copy of the warrant.  Tr. I at 30.  Deputy Marshal Marcotte wrote the statement as suggested to ensure that Defendant was not released on bond or for other reasons before federal law enforcement agents had a chance to lodge a federal detainer.  Id. at 31.

Approximately an hour after Deputy Marshals McAllister and Marcotte departed the facility, Agent Johns arrived with co-defendant Westbrook and copies of the warrants for both defendants.[7]  Id. at 32, 78-79.  Agent Johns was informed that Defendant had already been booked in under the Clay County charge.  Id. at 80.  Agent Johns then presented his copy of Defendant's federal arrest warrant, requesting that it be accepted as a detainer.  Id. Initially, the St. Johns County corrections officers were hesitant to accept the warrant as a detainer because it was not a certified copy with a raised seal.  See id.  After some discussion, however, Agent Johns convinced them to accept the copy of the warrant as a temporary detainer with the understanding that an official detainer would be filed later that morning.  See id. at 80-81.  The warrant was stamped as "Received" by St. Johns County at 3:56 A.M. on November 15, 2008.  Id. at 82.

_____

[7] The consent search which Special Agent Johns had conducted earlier that morning was of a shed located behind a residence identified by co-defendant Westbrook.  Although the shed was originally suspected to house a "meth lab," nothing of evidentiary value was found during the search.  Tr. I at 78, 91-92.

Later on November 15, 2007, at approximately 11:00 A.M., Deputy Marshals McAllister and Marcotte returned to the St. Johns County Detention Center to pick up co-defendant Westbrook for her initial appearance in federal court. Id. at 33. They asked a clerk at the facility about Defendant's status and were informed that Defendant was in state court for his first appearance. Id. at 34-35. The clerk confirmed that an official federal detainer had been lodged as to Defendant, and the Deputy Marshals visually confirmed this information on the clerk's computer screen. Id. at 34; see also Gov't Exh. 12.

Defendant was brought before Judge Christensen of St. Johns County Court for a first appearance at the 8:00 A.M. session on November 15, 2007. See Gov't Exh. 13. The judge found probable cause to continue to hold Defendant, found Defendant to be indigent and appointed counsel for Defendant. See id. At 11:51 A.M. on November 15, a teletype was sent from St. Johns County to Clay County informing them that Defendant was available for immediate pick up. See Gov't Exh. 8.

Two weeks passed. On November 30, another message was sent to Clay County reminding them Defendant was available for pick up. See Gov't Exh. 9. Clay County did not respond. Finally, on December 11, 2007, with Defendant still in St. Johns County, a third message was sent requesting that Clay County pick up Defendant because the St. Johns facility was at capacity. See Gov't Exh. 10. Defendant was finally picked up that day by Clay County officers and transferred to the Clay County jail. See Gov't Exh. 11.

On December 26, 2007, Defendant appeared in state court on his Clay County charge, pleaded guilty, and was sentenced to time served. On December 27, pursuant to a detainer, the U.S. Marshals Service assumed custody of Defendant and booked him on the federal

charge.  <u>See</u> Gov't Exhs. 2-3.  The Marshals Service signed and dated Defendant's arrest warrant to reflect a "Date of Arrest" of December 27, 2007.  <u>See</u> Gov't Exh. 1; <u>see</u> <u>also</u> Tr. I at 39.  Defendant had his initial appearance in U.S. District Court, Jacksonville Division, later that day before U.S. Magistrate Judge Thomas E. Morris.  <u>See</u> Minute Entry (Doc. 243).

## III.    Summary of Argument

In the Motion, Defendant contends that he was denied a prompt initial appearance before a federal magistrate judge following his arrest, as required by Rule 5 of the Federal Rules of Criminal Procedure (Rule(s)).  <u>See</u> Motion at 1.  As a result, Defendant argues that the Government failed to bring him to trial within 70 days as required by 18 U.S.C. § 3161(c)(1).  <u>See</u> <u>id.</u>  Defendant claims that the Speedy Trial Act's language requiring that a defendant be brought to trial within 70 days of the indictment or the initial appearance, "whichever date last occurs," 18 U.S.C. § 3161(c)(1), should be disregarded in this case because the statute implicitly assumes that the Government will adhere to its duty to provide a prompt initial appearance as dictated by Rule 5.  <u>See</u> <u>id.</u>  Therefore, Defendant claims he was entitled to be brought to trial within 70 days of the date of his indictment, November 7, 2007.  <u>See</u> <u>id.</u>  Defendant also claims, in the alternative, that the Government failed to bring him to trial within 70 days of his appearance before the St. Johns County Court judge on November 15, 2007.[8]  <u>See</u> Tr. II at 3-4.

In response to Defendant's Rule 5 argument, the Government argues that Defendant was in state custody, not federal custody, from the period of November 15, 2007 to

---

[8] Defendant does not intend to concede, by virtue of making this argument, that this appearance before the county judge on November 15, 2007 was sufficient to meet the requirements of Rule 5.  <u>See</u> Defendant's Corrected Response to Doc. No. 273 (Doc. 374), at 1.

December 26, 2007, and that therefore the requirements of Rule 5 were not triggered.  <u>See</u>
Opposition at 3.  In the alternative, the Government offers that if the Defendant is considered
to have been in federal custody during that period, that any resulting delay in Defendant's
Rule 5 appearance was beyond the Government's control because it lacked authority to take
custody of Defendant while he was pending the resolution of his state court charge.  <u>See</u> <u>id.</u>
at 4-5.  Even if unreasonable delay occurred in providing Defendant with his Rule 5 hearing,
the Government contends that the only available remedy is suppression of any evidence
obtained during the period of delay, and that in this case no evidence against Defendant was
obtained from the Defendant or other sources during the period of delay at issue.  <u>See</u> <u>id.</u> at
5-6.

  With regard to Defendant's speedy trial argument, the Government contends that  the
speedy trial statute cannot be interpreted as requiring a trial within 70 days of when a
defendant "should have had," as opposed to actually had, his initial appearance.  <u>See</u> <u>id.</u> at
7.  The Government avers that the plain meaning of the statute sets the triggering date as
the date the defendant actually had his initial appearance in the court where the charge is
pending.  <u>See</u> <u>id.</u>  The Government maintains that when a defendant is held in state custody
with a federal detainer, the speedy trial "clock" does not begin running until the defendant is
turned over by state authorities to federal custody.  <u>See</u> <u>id.</u>

**IV.   Discussion**

  The Speedy Trial Act is "intended to mandate an orderly and expeditious procedure
for federal criminal prosecutions by fixing specific, mechanical time limits within which the
various progressions in the prosecution must occur."  <u>United States v. Shahryar</u>, 719 F.2d

1522, 1523-24 (11th Cir. 1983) (per curiam).  Section 3161(c)(1) of the Act, the provision at

issue in this case, provides:

> In any case in which a plea of not guilty is entered, the trial of a
> defendant charged in an information or indictment with the
> commission of an offense shall commence within seventy days
> from the filing date (and making public) of the information or
> indictment, or from the date the defendant has appeared before
> a judicial officer of the court in which such charge is pending,
> <u>whichever date last occurs</u>.

18 U.S.C. § 3161(c)(1) (emphasis added).  Therefore, the two potential "start" dates for

purposes of calculating a defendant's speedy trial period are the date of the filing of an

information or indictment, and the date of the defendant's initial appearance in federal court.[9]

<u>See</u> <u>id.</u>

The date of the defendant's initial appearance is in turn controlled by the requirements

of Rule 5, which provides that "[a] person making an arrest within the United States must take

the defendant <u>without unnecessary delay</u> before a magistrate judge."  Fed. R. Crim. P.

5(a)(1)(A) (emphasis added).  Because the Speedy Trial Act "'applies only to federal

prosecutions it is only a <u>federal</u> arrest, not a state arrest, which will trigger the

commencement of the time limits set in the Act.'"  <u>Shahryar</u>, 719 F.2d at 1524 (citing <u>United

States v. Iaquinta</u>, 674 F.2d 260, 264 (4th Cir. 1982)).

### A.      Whether Defendant's November 15, 2007 Arrest Constituted a Federal Arrest

Defendant argues that his arrest on November 15, 2007 was a federal arrest and

therefore his Rule 5 right to an appearance "without unnecessary delay" before a magistrate

---

[9] The indictment was returned against Defendant on November 7, 2007.

judge attached at that time.  Motion at 1.  The Government concedes that it was "through the actions of the federal agents" that Defendant was initially arrested on November 15, but claims he was not held in federal custody until Defendant's Clay County charge was resolved and he was turned over to the Marshals Service on December 27, 2007.  Opposition at 7.

The Government's position that Defendant was not in federal custody until December 27, 2007, when Defendant was booked on the federal charge by the Marshals Service, is not supported by the evidence.  Rule 4 clearly provides that "[a] warrant is executed by arresting the defendant."  Fed. R. Crim. P. 4(c)(3)(A).  Furthermore, it provides that "[u]pon arrest, an officer possessing the warrant must show it to the defendant.  If the officer does not possess the warrant, the officer must inform the defendant of the warrant's existence and of the offense charged and, at the defendant's request, must show the warrant to the defendant as soon as possible."  Id.  Here, Defendant was physically arrested by a group of state and federal officers acting at the behest of the lead DEA case agent on November 15, 2007.  He was, in compliance with Rule 4, informed by a federal agent of the federal warrant against him and the nature of the charge.  In the face of these facts, the Government cannot prevail with its argument that Defendant was not in federal custody until December 27, 2007, when the Marshals resumed custody of Defendant.

Discussing a similar question in the context of 18 U.S.C. § 3161(b), which applies to cases in which a defendant is arrested before a complaint or indictment is filed, the Tenth Circuit held that there must be a "coincidence" of a pending federal complaint and federal custody based on that complaint for an arrest to have occurred.  United States v. Bagster, 915 F.2d 607, 611 (10th Cir. 1990).  Applied in the context of § 3161(c), it follows logically

that there must be a coincidence of a pending indictment and federal custody based on that indictment for a federal arrest to have occurred.

In this case, there was, at least for a limited time on November 15, 2007, federal custody of the Defendant based on the federal indictment.  Defendant was apprehended by a cadre of both state and federal law enforcement officers.  Significantly, he was informed by a DEA agent that he was being placed under arrest on a federal conspiracy charge.  He was transported to jail by federal Marshals.  The law enforcement agents involved in the apprehension were acting at the behest and under the direction of the lead case agent in the federal case, DEA Special Agent Johns.  There was a "coincidence" of a pending federal indictment and federal custody based on that indictment.  See Bagster, 915 F.2d at 611. Therefore, the record is clear that Defendant was arrested on the federal charge on November 15, 2007.

### B.   Whether Defendant's Rights Under Rule 5 Were Violated

Having come under arrest on the federal charge on November 15, 2007, Defendant was entitled to an appearance before a magistrate judge "without unnecessary delay."  Fed. R. Crim. P. 5(a)(1)(A).  The burden of establishing whether there has been a Rule 5 violation is on the defendant.  United States v. Brown, 459 F.2d 319, 324 (5th Cir. 1972).[10]

In determining whether there has been a Rule 5 violation, the court must examine the reasons for the delay.  United States v. Purvis, 768 F.2d 1237, 1239 (11th Cir. 1985). Various factors may be considered, such as "the availability of [the] committing magistrate,

---

[10] Pursuant to Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), decisions of the Fifth Circuit handed down on or before September 30, 1981 became binding as precedent for the newly created Eleventh Circuit.

the length of delay before the prisoner is taken before the magistrate and the police purpose or justification, if any, for the delay." Brown, 459 F.2d at 324.  Moreover, it is also proper to consider "whether the defendant was mistreated or improperly interrogated," Purvis, 768 F.2d at 1239, as the underlying purpose of Rule 5 is to prevent administrative detention in the absence of probable cause and to "reduce the opportunity for third-degree practices by the police." United States v. Mendoza, 473 F.2d 697, 702 (5th Cir. 1973) (citing Culombe v. Connecticut, 367 U.S. 568, 584-85 (1961)).

The evidence here establishes that the reason for the delay in bringing Defendant before a federal magistrate judge was the Government's good-faith belief that Defendant was in state custody pending resolution of his state charge.  No evidence was adduced at the hearing of any improper law enforcement or prosecutorial motive behind the delay. Defendant was not interrogated, he did not volunteer any statement, and no other evidence was collected during the relevant time frame.  The Court finds no indication of third-degree practices, mistreatment of the Defendant, or other tactics on the part of the Government to bolster its case during the period of delay.  Therefore, under the particular facts and circumstances of this case, the Court finds no unnecessary delay occurred. Brown, 459 F.2d at 324.

Even if the Court were to find that the 42-day delay in bringing Defendant before a federal magistrate judge constituted unnecessary delay, the record is clear that no evidence that could be used against Defendant was procured between the date of Defendant's arrest and his first appearance in federal court.  The only remedy for a violation of Rule 5 is the suppression of evidence obtained as a result of the violation. Mendoza, 473 F.2d at 702; see

also <u>Mallory v. United States</u>, 354 U.S. 449, 451-54 (1957).  Therefore, because no evidence against Defendant was seized during the relevant time frame, no remedy would be available. <u>See</u> <u>id.</u>  Moreover, contrary to Defendant's argument, dismissal would not be available as an alternative remedy; indeed, the Eleventh Circuit has "never recognized dismissal of the indictment as a proper remedy for a Rule 5 violation." <u>United States v. Bibb</u>, 194 Fed. Appx. 619, 623 (11th Cir. 2006) (citing <u>Purvis</u>, 768 F.2d at 1238).

**C.      Whether Defendant's Right to a Speedy Trial Was Violated**

Defendant argues that because his initial appearance before a federal magistrate judge was untimely under Rule 5, the Court should revert to the date of indictment as the commencement of the 70-day period in which Defendant must be brought to trial.  Motion at 1.  For the reasons discussed above, the Court finds that the delay in bringing Defendant before a federal magistrate judge was not "unnecessary" delay that would violate Rule 5. However, even if the Court were to have found that Defendant's initial appearance was a violation of Rule 5, Defendant's argument that he was deprived of a speedy trial would still be unavailing.

The plain language of the Speedy Trial Act does not permit the Court to disregard the date of Defendant's initial appearance because of the alleged untimeliness thereof.  The controlling law of the Eleventh Circuit (in cases in which the indictment occurs before arrest, as governed by 18 U.S.C. § 3161(c)) is that "the seventy day clock does not begin running until a defendant has appeared in the court where the charges are pending." <u>United States v. O'Bryant</u>, 775 F.2d 1528, 1531 (11th Cir. 1985).  There is no provision in the statute for the "clock" to begin running on the date the defendant "<u>should have been</u>" brought before a

judicial officer, even when regrettable delay does occur.  <u>United States v. Wilkerson</u>, 170 F.3d 1040, 1042 (11th Cir. 1999) (emphasis added).

Therefore, Defendant's date of indictment cannot be used to calculate the 70-day period.  Only Defendant's actual initial appearance date of December 27, 2007, not the date on which he theoretically should have been brought before the magistrate judge, may be used to trigger the speedy trial clock.  <u>See</u> <u>id.</u>  Counting from that date, the Court must also exclude all periods which may be considered excludable delay under 18 U.S.C. § 3161(h), which include the following:

(1)     From December 27, 2007 to January 3, 2008, due to Defendant's motions to continue the detention hearing; <u>see</u> 18 U.S.C. § 3161(h)(1)(F);

(2)     From January 11, 2008 to January 15, 2008, due to Defendant's motion requesting an extension of time to renew the motion filed by Defendant while still in state custody; <u>see</u> 18 U.S.C. § 3161(h)(1)(F);

(3)     From January 25, 2008 to February 8, 2008, due to Defendant's motion for miscellaneous relief (Doc. 316); <u>see</u> 18 U.S.C. § 3161(h)(1)(F);

(4)     From February 1, 2008 to February 7, 2008, due to Defendant's original Motion to Dismiss Indictment; <u>see</u> 18 U.S.C. § 3161(h)(1)(F);

(5)     From February 6, 2008 to April 17, 2008, due to Defendant's instant Motion; <u>see</u> 18 U.S.C. §§ 3161(h)(1)(F), 3161(h)(1)(J)[11];

_____

[11] This reflects the days preceding the date the Court took the Motion under advisement (following Defendant's notice that he was declining to submit a supplemental memorandum, <u>see</u> Docs. 373, 374), plus an additional 30 days permitted by the statute for the consideration of the Motion.  The additional days of consideration (from April 18, 2008 to the present) would not be excludable, were they not subsumed within the time period reflected in paragraph (6).

(6)     From February 14, 2008 through the end of the June 2008 trial term, as a result of the Court's Order granting the co-defendants' motion to continue trial over Defendant's objection (Doc. 360), and on the basis of the findings made therein.  <u>See</u> 18 U.S.C. § 3161(h)(8)(A).

Because the periods represented by the pendency of these motions overlap, the actual excluded time is from December 27, 2007 to January 3, 2008; from January 11 to January 15, 2008; and from January 25, 2008 through the end of the June 2008 trial term. <u>See</u> <u>id.</u>  Only 16 non-excludable days have actually expired since the clock began. Therefore, Defendant has not been denied a speedy trial.  <u>See</u> 18 U.S.C. § 3161(c)(1).

After due consideration, it is

**RECOMMENDED**:

Defendant William Joe Horne's Amended Motion to Dismiss Indictment with Prejudice for Failure to Bring the Defendant to Trial Within 70 Days as Required by 18 USC [§] 3161(c)(1) (Doc. 329) should be **DENIED.**

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on April 29, 2008.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

jcd

Copies to:

The Honorable Virginia M. Hernandez Covington

Counsel of Record